IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH THE GOOGLE ACCOUNTS Leonelopez123@gmail.com ramon6210@gmail.com AND mtz.lpz.fernando@gmail.com STORED AT PREMISES CONTROLLED BY GOOGLE LLC | Case No.  1:24-mj-603<br><br>**Filed Under Seal** |

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**

I, Justin D. Phillips, being first duly sworn, hereby depose and state as follows:

1. I am a United States Postal Inspection Service (USPIS) Task Force Officer (TFO), with authority to investigate federal drug crimes. I have been a USPIS TFO with the USPIS since March 2023. I am currently assigned to a multi-function team, located at the Fargo, North Dakota office of the Denver Division, where my primary duties include investigating interstate drug and money laundering criminal activity in North Dakota, and elsewhere. My duties include investigating the use of the US Mails to illegally send and received controlled substances and drug trafficking instrumentalities. I have received formal training form the USPIS and training through contact with experts from various law enforcement agencies, as well as training in the enforcement of laws, and the identification of packages with characteristics indicative of criminal activity. I have conducted and participated in criminal investigations utilizing the normal methods of investigation.

2. I have completed numerous hours of criminal investigations, including compiling information; interviewing victims, witnesses, and suspects; and collecting evidence to support criminal complaints and search warrant applications. I have worked with other experienced state and federal law enforcement officers and supervisors and have gained knowledge and experience from them. My work has involved preparing and assisting in the drafting and service of numerous search warrants.

3. This affidavit is submitted in support of an application for a warrant to search information associated with the following Google accounts Leonelopez123@gmail.com (**"SUBJECT ACCOUNT 1"**), ramon6210@gmail.com (**"SUBJECT ACCOUNT 2"**), and mtz.lpz.fernando@gmail.com (**"SUBJECT ACCOUNT 3"**), that are stored at premises owned, maintained, controlled, or operated by Google LLC AND Google Payment Corporation ("Google"), an electronic communications service and/or remote computing service provider headquartered at 1600 Amphitheater Parkway, Mountain View, California, for evidence, fruits, and instrumentalities of violations of Title 18 U.S.C. §§ 1956, 1957 (Money Laundering); and Title 21 U.S.C. §§ 841(a)(1) and 846 (possession with intent to distribute and distribution of controlled substances, and conspiracy to do the same) have been committed, are being committed, and will be committed by persons known and unknown to the investigation. There is also probable cause to believe that the location information described in Attachment B will constitute evidence of these criminal violations.

4.  This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Google to disclose to the government copies of the information (including the content of communications) further described in Section I of Attachment B.  Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

5.  This affidavit is based on my personal knowledge, interviews of witnesses, physical surveillance, information received from other law enforcement agents, review of documents and evidence, my experience and training, and the experience of other agents. Because this affidavit is being submitted for the limited purpose of establishing probable cause in support of the requested search warrant, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary to establish probable cause to search the **SUBJECT ACCOUNT's** referenced herein after as **SUBJECT ACCOUNT 1, SUBJECT ACCOUNT 2, and SUBJECT ACCOUNT 3**  for evidence of Money Laundering, in violation of 18 U.S.C. §§ 1956, 1957; and Possession With intent to Distribute and Distribution of Controlled Substances, and Conspiracy to do the same in violation of Title 21 U.S.C. §§ 841(a)(1) and 846 made through interstate communications.

## JURISDICTION

6.  This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711.  18 U.S.C. §§ 2703(a), (b)(1)(A),

& (c)(1)(A). Specifically, the Court is "a district court of the United States . . . that has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

## PROBABLE CAUSE

7. Beginning on or about July 15, 2024, United States Postal Inspection Service (USPIS) North Dakota (ND) personnel, began receiving information from investigators with the Southwest Narcotics Task Force (SWNTF) in Dickinson, ND as well as USPIS Florida (FL) personnel, regarding possible shipments of controlled substance being sent through the Unites States Postal Service (USPS) to an address in Dickinson, ND. The packages containing controlled substances were expected to be originating from FL or California (CA).

8. On or about July 17, 2024, through a review of USPS business records, databases and conversations with USPIS personnel, USPIS personnel learned of USPS Priority Mail Express bearing tracking number 9481 7112 0621 0048 1355 22. The Priority Mail Express package had been shipped from National City, CA and was destined to 951 6th St W Dickinson, ND. USPIS ND personnel reviewed USPS Priority Mail Express package ending in 5522 and determined the suspicious Priority Mail Express package contained several features, that in combination, are consistent with packages containing controlled substances, instrumentalities, or proceeds.

9. On the same date, USPIS personnel identified a second suspicious Priority Mail package destined to Dickinson, ND. The second suspicious Priority Mail package bearing tracking number 9505 5124 3991 4194 4307 12, had been shipped from Pensacola, FL

and was destined to 951 6th St W Dickinson, ND. USPIS ND personnel reviewed USPS Priority Mail package ending in 0712 and determined the suspicious Priority Mail package contained several features, that in combination, are consistent with packages containing controlled substances, instrumentalities, or proceeds.

10. On July 18, 2024, USPIS ND personnel received federal search warrant (3:24-mj-465), authorized by the Honorable United States Magistrate Judge Alice Senechal, to open the suspicious Priority Mail Express package ending in 5522. On the same date, USPIS ND personnel executed the federal search warrant, resulting in the seizure of a combined gross approximate weight of 1,832 grams of field-tested methamphetamine.

11. On July 22, 2024, USPIS ND personnel received federal search warrant (3:24-mj-468), authorized by the Honorable United States Magistrate Judge Alice Senechal, to open the suspicious Priority Mail Express package ending in 0712. On the same date, USPIS ND personnel executed the federal search warrant, resulting in the seizure of a combined gross approximate weight of 437 grams of field-tested cocaine.

12. On July 29, 2024, investigators from USPIS and other law enforcement agency officers, conducted a controlled delivery and multiple search warrants relating to the above-mentioned seizures. At the completion of the operation, a reliable Confidential Informant (CI) herein referred to as CI was produced. During the interview, the CI explained that the current source used a Navy Federal Credit Union account in the name of Jennifer Trejo, to receive payments for shipments of controlled substances. The CI said they have deposited money into the sources Navy Federal account under the name

of Jennifer Trejo in varying amounts for controlled substances. The CI additionally referenced another source of supply associated to the Drug Trafficking Organization in CA by the name of "Nando". The CI was not able to produce "Nando's" phone number during the initial interview, however, indicated that the other co-conspirator in Dickinson, ND, identified as Lorenzo Salter had also purchased controlled substances from "Nando" and would have "Nando's" contact within their phone.

13. The CI said they have been using other individuals CashApp accounts to send money to the source while in ND, due to not having a Navy Federal Credit Union location in ND. The CI had the sources name entered into his phone under the name of "Jennifer Trejo". Through a review of the CI's phone, phone number "(619)831-2372", was identified to be listed under the contact name of Jennifer Trejo. The text thread reviewed between the CI and "(619)831-2372", identified several messages consistent with the distribution of controlled substances to include money transactions and exchange of financial account information used for payment through CashApp with a username of "$Ramon6210" which was found to be associated to Ramon Martinez Jr.

14. Over the course of the next few months, the CI stayed in constant communication with USPIS personnel and conducted several additional controlled purchases of methamphetamine through the United States Postal Service (USPS) under the direction and control of the USPIS. In addition, the CI completed two in-person controlled

purchases of controlled substances from Ramon Martinez Jr. in San Diego, CA, at the direction and control of USPIS ND personnel.

15. On September 11, 2024, members of the USPIS and additional assisting law enforcement agencies, conducted the second in-person controlled purchase of methamphetamine and cocaine from Ramon Martinez Jr. with the use of the CI.

16. In the afternoon hours of September 11, 2024, the CI contacted Ramon Martinez Jr. and coordinated the time for the controlled purchase to be conducted at the pre-determined location set by USPIS personnel. Shortly after contacting Ramon Martinez Jr., Surveillance units observed a red in color Jeep Gladiator style pickup, drop a male off at Ramon Martinez Jr's known residence of 6315 Calle Pavana, San Diego, CA. The male that was dropped off, was later identified as Ramon Martinez Jr., who provided the CI with approximately eight (8) pounds of methamphetamine and one (1) Kilogram (Kilo) of cocaine.

17. Following the controlled purchase of approximately eight (8) pounds of methamphetamine and one (1) Kilo of cocaine from Ramon Martinez Jr., USPIS personnel reviewed call detail records for a phone number, known to be utilized by Ramon Martinez Jr. During the review, phone number (619) 829-2849, was identified to have contacted Ramon Martinez Jr. on September 11, 2024, prior to the controlled

purchase of methamphetamine and cocaine. Ramon Martinez Jr. additionally had called the #2849 number, prior to the controlled purchase.

18. The #2849 number was reviewed through a law enforcement database, which showed the phone number to be registered to "Karen Lopez" with a provider of T-Mobile providing a port date of November 14, 2014.

19. USPIS personnel reviewed the #2849 number through the Consolidated Lead Evaluation and Reporting (CLEAR) database. The #2849 number was identified to be associated to Blanca E Gallegos. An associated email address within Blanca's CLEAR profile has been identified as "Leonelopez123@gmail.com" from this point forward referenced as **"SUBJECT ACCOUNT 1".** Furthermore, associated CLEAR Motor Vehicle Service & Warranty records, indicate a 2021 Jeep Gladiator bearing Vehicle Identification Number (VIN) 1C6JJTEG1ML555480 is registered to Blanca at the address of 2030 O Ave National City, CA 91950.

20. USPIS personnel reviewed Law Enforcement databases and identified VIN 1C6JJTEG1ML555480 to be associated with CA License Plate (CA LP) 23329H3. USPIS personnel reviewed the CLEAR License Plate Recognition database for CA LP 23329H3, confirming the vehicle to be a Red Jeep Gladiator with a black bed liner. Furthermore, several reviewed License Plate Reader (LPR) readings were in the geographical proximity of the registered vehicle address of 2030 O Ave National City, CA 91950. A LPR is a specialized camera that can capture and analyze license plate information. These cameras can be utilized in a fixed or mobile setting. USPIS

personnel reviewed additional Law Enforcement records, identifying Leonel Lopez to have been stopped for a traffic violation in National City, CA on or about March 19, 2024, in the Red 2021 Jeep bearing CA LP 23329H3.

21. USPIS personnel reviewed USPS business records and databases for the address of 2030 O Ave National City, CA 91950, resulting in Leonel Lopez to actively be receiving USPS letter mail a recent as of September 14, 2024. A review of several social media platforms identify Leonel Lopez, Blanca Gallegos, and Ramon Martinez Jr are known associates of each other.

22. A preliminary review of financial records identified several business Currency Transaction Reports (CTR) for Leonel Lopez. A CTR is a bank form used in the United States "U.S." to help prevent money laundering. This form must be filled out by a bank representative whenever a customer attempts to complete a transaction of more than $10,000 USD. There were several pages of CTR's filed on Leonel Lopez with associated occupation/business types listed as but not limited to; "Lopez Construction, Self Employed Contractor, Owner Construction Co, CEO Construction Company" and more. A listed email address of **"SUBJECT ACCOUNT 1"** and phone number #2849 number were listed in a CTR as recent as August 12, 2024. Furthermore, several currency transactions were completed through Zelle between Ramon Martinez and Lopez Construction between the dates of February 22, 2024, and August 12, 2024.

23. On August 19, 2024, USPIS personnel received a response from BLOCK INC, regarding CashApp registration details. Through further review, "Ramon6210" is associated to

Ramon Martinez Jr with a listed email of "ramon6210@gmail.com" from this point forward referenced as **"SUBJECT ACCOUNT 2".** The two addresses associated with Ramon Martinez Jr. were provided as 2237 Prospect St National City, CA 91950 and 6315 Calle Pavana San Diego, CA 92139. Several bank accounts were listed to include Navy Federal Credit Union and U.S. Bank National Association. A review of Ramon Martinez Jr's CashApp transaction history identifies several paid-out transactions with a combined total of $15,490 United States Dollar (USD). These transactions are consistent with purchases of controlled substances as verified by the CI. Additionally, six (6) of the transactions to Ramon Martinez Jr. were at the direction and control of USPIS personnel with a combined total of $8,440 USD for the purchase of controlled substances.

24. On September 16, 2024, USPIS personnel received a response from US Bank, regarding account registration and transaction detail history for Ramon Martinez Jr. Through further review, Ramon Martinez Jr. listed a customer address of 6315 Calle Pavana, San Diego, CA 92139, phone number 619-245-5216 with an email address of **SUBJECT ACCOUNT 2.** Furthermore, a captured Internet Protocol (IP) Address of 108.86.181.212 was captured during the account login process.

25. USPIS personnel reviewed IP Address 108.86.181.212 through USPS business records and databases which was identified to have tracked the status and location of multiple packages known to be concealing controlled substances to include Priority Mail Express

      package bearing tracking number ending in 5522, which was found to be concealing a combined gross approximate weight of 1,832 grams of field-tested methamphetamine.

26. USPIS personnel identified IP Address 108.86.181.212 to be a AT&T provider with an account name of Elvira Martinez with a billing address of 6315 Calle Pavana San Diego, CA 92139. A review of the CLEAR database indicates Elvira Martinez is an associate or relative of Ramon Martinez Jr. at the address of 6315 Calle Pavana San Diego, CA 92139.

27. Over the course of the investigation, additional information was provided by the CI in follow up interviews, identifying "Nando" to have been the CI's source of supply (SOS) prior to receiving quantities of controlled substances from Ramon Martinez Jr. Furthermore, the CI explained that "Nando" introduced the CI to Ramon Martinez Jr. in San Diego, CA, due to a falling out that occurred in which at that time, Ramon Martinez Jr. took over as the CI's SOS within the same DTO.

28. On September 26, 2024, USPIS ND personnel, reviewed Lorenzo Salter's cell phone, in attempt to identify "Nando" as previously mentioned in paragraph "12.". Upon further review contact name of (Nandough followed by a flag character and money character), with phone number (619)709-3440 was identified. The text thread reviewed between

Lorenzo Salter and #3440 number, identified several messages consistent with the distribution of controlled substances.

29. The #3440 number was reviewed through a law enforcement database, which showed the phone number to be registered to "Blanca Torres" with a provider of ATT Mobility providing a port date of August 2, 2002.

30. USPIS personnel reviewed the #3440 number through the CLEAR database. The #3440 number was identified to be currently associated with Blanca Torres at 536 Bonito Ave Imperial Beach, CA 91932, however, Fernando Martinez Lopez also associates with #3440 number at the same address as Blanca Torres at 536 Bonito Ave Imperial Beach, CA 91932.

31. A preliminary review of financial records identified a business Currency Transaction Reports (CTR) for Fernando Martinez Lopez. A CTR was filed on April 5, 2023, for Fernando Martinez Lopez with an occupation/business types listed as "Building Engineer". The CTR has a listed email address of "mtz.lpz.fernando@gmail.com" from this point forward referenced as **"SUBJECT ACCOUNT 3"** and phone number #3440

number. Furthermore, a currency transaction was completed through Zelle between Ramon Martinez and Fernando Martinez-Lopez on July 1, 2024.

32. On September 29, 2024, USPIS ND personnel reviewed USPS business records and databases and identified Blanca Torres and Fernando Martinez Lopez to both actively be receiving letter mail at the address of 536 Bonito Ave Imperial Beach, CA 91932.

## **BACKGROUND CONCERNING GOOGLE**[1]

33. Google is a United States company that offers to the public through its Google Accounts a variety of online services, including email, cloud storage, digital payments, and productivity applications, which can be accessed through a web browser or mobile applications. Google also offers to anyone, whether or not they have a Google Account, a free web browser called Google Chrome, a free search engine called Google Search, a free video streaming site called YouTube, a free mapping service called Google Maps, and a free traffic tracking service called Waze. Many of these free services offer additional functionality if the user signs into their Google Account.

34. In addition, Google offers an operating system ("OS") for mobile devices, including cellular phones, known as Android. Google also sells devices, including laptops, mobile phones, tablets, smart speakers, security cameras, and wireless routers. Users of Android and Google devices are prompted to connect their device to a Google Account when they

---

[1] The information in this section is based on information published by Google on its public websites, including, but not limited to, the following webpages: the "Google legal policy and products" page available to registered law enforcement at lers.google.com; product pages on support.google.com; or product pages on about.google.com.

first turn on the device, and a Google Account is required for certain functionalities on these devices.

35. Signing up for a Google Account automatically generates an email address at the domain gmail.com. That email address will be the log-in username for access to the Google Account.

36. Google advertises its services as "One Account. All of Google working for you." Once logged into a Google Account, a user can connect to Google's full suite of services offered to the general public, described in further detail below. In addition, Google keeps certain records indicating ownership and usage of the Google Account across services, described further after the description of services below.

37. Google integrates its various services to make it easier for Google Accounts to access the full Google suite of services. For example, users accessing their Google Account through their browser can toggle between Google Services via a toolbar displayed on the top of most Google service pages, including Gmail and Drive. Google Hangout, Meet, and Chat conversations pop up within the same browser window as Gmail. Attachments in Gmail are displayed with a button that allows the user to save the attachment directly to Google Drive. If someone shares a document with a Google Account user in Google Docs, the contact information for that individual will be saved in the user's Google Contacts. Google Voice voicemail transcripts and missed call notifications can be sent to a user's Gmail account. And if a user logs into their Google Account on the Chrome browser, their

subsequent Chrome browser and Google Search activity is associated with that Google Account, depending on user settings.

38. When individuals register with Google for a Google Account, Google asks users to provide certain personal identifying information, including the user's full name, telephone number, birthday, and gender. If a user is paying for services, the user must also provide a physical address and means and source of payment.

39. Google typically retains and can provide certain transactional information about the creation and use of each account on its system. Google captures the date on which the account was created, the length of service, log-in times and durations, the types of services utilized by the Google Account, the status of the account (including whether the account is inactive or closed), the methods used to connect to the account (such as logging into the account via Google's website or using a mobile application), details about the devices used to access the account, and other log files that reflect usage of the account. In addition, Google keeps records of the Internet Protocol ("IP") addresses used to register the account and accept Google's terms of service, as well as the IP addresses associated with particular logins to the account. Because every device that connects to the Internet must use an IP address, IP address information can help to identify which computers or other devices were used to access the Google Account.

40. Google maintains the communications, files, and associated records for each service used by a Google Account on servers under its control. Even after a user deletes a

communication or file from their Google Account, it may continue to be available on Google's servers for a certain period of time.

41. In my training and experience, evidence of who was using a Google account and from where, and evidence related to criminal activity of the kind described above, may be found in the files and records described above. This evidence may establish the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or, alternatively, to exclude the innocent from further suspicion.

42. Based on my training and experience, messages, emails, voicemails, photos, videos, documents, and internet searches are often created and used in furtherance of criminal activity, including to communicate and facilitate the offenses under investigation. Thus, stored communications and files connected to a Google Account may provide direct evidence of the offenses under investigation.

43. In addition, the user's account activity, logs, stored electronic communications, location data, and other data retained by Google can indicate who has used or controlled the account. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, subscriber information, email and messaging logs, documents, and photos and videos (and the data associated with the foregoing, such as geo-location, date and time) may be evidence of who used or controlled the account at a relevant time. As an example, because every device has unique hardware and software identifiers, and because every device that

connects to the Internet must use an IP address, IP address and device identifier information can help to identify which computers or other devices were used to access the account. Such information also allows investigators to understand the geographic and chronological context of access, use, and events relating to the crime under investigation.

44. Account activity may also provide relevant insight into the account owner's state of mind as it relates to the offenses under investigation. For example, information on the account may indicate the owner's motive and intent to commit a crime (*e.g.,* information indicating a plan to commit a crime), or consciousness of guilt (*e.g.,* deleting account information in an effort to conceal evidence from law enforcement).

45. Other information connected to the use of a Google account may lead to the discovery of additional evidence. For example, the apps downloaded from the Google Play store may reveal services used in furtherance of the crimes under investigation or services used to communicate with co-conspirators. In addition, emails, instant messages, Internet activity, documents, and contact and calendar information can lead to the identification of co-conspirators and instrumentalities of the crimes under investigation.

46. Therefore, Google's servers are likely to contain stored electronic communications and information concerning subscribers and their use of Google services. In my training and

experience, such information may constitute evidence of the crimes under investigation including information that can be used to identify the account's user or users.

## CONCLUSION

47. Based on the facts set forth above, and based on my training, experience, and knowledge of the investigation, there is probable cause to believe that the individuals referenced herein have committed, violations of Title 18 U.S.C. §§ 1956, 1957 (Money Laundering); Title 21 U.S.C. §§ 841(a)(1) and 846 (possession with intent to distribute and distribution of controlled substances, and conspiracy to do the same), and there is probable cause to believe that the evidence and instrumentalities of those violations, as described in Section I of Attachment B, can be found in **SUBJECT ACCOUNT 1**, **SUBJECT ACCOUNT 2**, and **SUBJECT ACCOUNT 3** as further described in Attachment A.

48. Your affiant believes that the analyzation of **SUBJECT ACCOUNT 1**, **SUBJECT ACCOUNT 2**, and **SUBJECT ACCOUNT 3**, will aid in identifying and confirming targets' location data and presence at specified locations coinciding with captured IP accounts regarding known transactions of controlled substances. This information will also assist in identifying financial accounts potentially utilized to further enhance their drug trafficking organization.

49. Your affiant, therefore, respectfully requests that a search warrant be issued authorizing a search of the **SUBJECT ACCOUNT 1**, **SUBJECT ACCOUNT 2**, and **SUBJECT**

**ACCOUNT 3.** described in Attachment A and the search and seizure of the items listed in Attachment B, which are incorporated herein by reference.

50. Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant. The government will execute this warrant by serving the warrant on Google LLC. Because the warrant will be served on Google LLC, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

## REQUEST FOR SEALING

51. I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may give targets an opportunity to flee/continue flight from prosecution, destroy or tamper with evidence, change patterns of behavior, notify confederates, or otherwise seriously jeopardize the investigation.

Respectfully submitted,

*Justin Phillips*
Justin D. Phillips
USPIS TFO
United States Postal Inspection Service

Subscribed and sworn to before me in person or via telephone or other reliable electronic means this 30th day of September 2024.

*Alice R. Senechal*
Alice R. Senechal
United States Magistrate Judge